UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| BRADLEY D. QUIST,<br><br>Petitioner,<br><br>vs.<br><br>KELLIE WASKO, SECRETARY OF CORRECTIONS; AND THE ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA,<br><br>Respondents. | 1:24-CV-01004-ECS<br><br>OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING RESPONDENTS' MOTION TO DISMISS |

**I.   Background**

The petitioner, Bradley D. Quist, seeks to collaterally attack his 2017 state-court conviction. Doc. 1.[1] On April 20, 2017, following a four-day trial, a jury convicted Petitioner of second-degree murder. CRI15-000539 at 438. The circuit court for Brown County, Fifth Judicial Circuit, South Dakota, sentenced him to life in prison without the possibility of parole. Id. Quist appealed his conviction to the South Dakota Supreme Court. Case No. 28270, Doc. 001. On March 28, 2018, the South Dakota Supreme Court issued a written decision affirming

---

[1] In considering Quist's § 2254 petition and his objections to the Report and Recommendation, this Court examined relevant portions of his prior state criminal and state habeas proceedings. Within this Opinion and Order, this Court cites to documents in his current case by citing the Court's docket number. This Court will cite to "CRI15-000539" when citing documents from Quist's state criminal case and will cite to "Case No. 28270" when citing to Quist's direct appeal from his state criminal case. This Court will cite to "CIV20-000125" or "Case No. 30553" when citing to Quist's state habeas proceedings.

1

the judgment of conviction. South Dakota v. Quist, 910 N.W.2d 900 (S.D. 2018). Quist did not petition the United States Supreme Court for a writ of certiorari.

On March 25, 2020, almost two years after the South Dakota Supreme Court affirmed his conviction, Quist applied for a writ of habeas corpus in the circuit court for Brown County. CIV20-000125 at 1. The circuit court denied Quist's application on November 6, 2023. Id. at 73–74. Following the circuit court's denial, Quist moved for a certificate of probable cause, which the South Dakota Supreme Court denied on February 2, 2024. Id. at 79; Case No. 30553.

Just over a month later, on March 6, 2024, Quist petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. His petition was referred to United States Magistrate Judge Mark Moreno under 28 U.S.C. § 636(b)(1)(B) and the District of South Dakota's Civil Local Rules of Practice 72.1.A.2(b). Shortly after, Judge Moreno issued a report recommending this Court dismiss Quist's § 2254 petition as untimely. Doc. 14. Quist objected to Judge Moreno's recommendation, arguing the one-year statute of limitation period under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 101, 110 Stat. 1214, 1217 (1996), should be equitably tolled and alleging actual innocence. Doc. 15.

**II.     Standard of Review**

A district court reviews a report and recommendation under the standards provided in 28 U.S.C. § 636(b)(1), which states, "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." The district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

**III.    Discussion**

Judge Moreno correctly concluded that Quist's § 2254 petition was untimely under AEDPA's one-year statute of limitations period. See Doc. 14 at 10–11. For purposes of AEDPA, Quist's judgment became final on June 26, 2018. See 28 U.S.C. § 2244(d). Quist, therefore, had until June 26, 2019, to timely file his § 2254 petition. Quist did not file his petition until March 6, 2024—well past the June 26, 2019 deadline. To be sure, Quist did not even initiate his state habeas action until March 25, 2020—nine months after his federal limitations period had lapsed. CIV20-000125; see Johnson v. Norris, 170 F.3d 816, 817 (8th Cir. 1999) ("Federal courts may not consider claims made in habeas petitions unless those claims have first been fairly presented to an appropriate state court."). Correctly, then, Quist does not object to the conclusion that his petition was filed late. Yet he argues this Court should excuse his untimeliness by equitably tolling the statute of limitations.

a. **Equitable Tolling**

Because AEDPA's statute of limitations is nonjurisdictional, it is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 649 (2010). Equitable tolling allows federal courts to excuse a petitioner's failure to comply with federal timing rules. Gordon v. Arkansas, 823 F.3d 1188, 1195 (8th Cir. 2016). But it is "an exceedingly narrow window of relief." Id. (quoting Jihad v. Hvass, 267 F.3d 803, 805 (8th Cir. 2001)). A petitioner is entitled to equitable tolling "only if [he] shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Muhammad v. United States, 735 F.3d 812, 815 (8th Cir. 2013)).

The Report and Recommendation concluded that Quist had not shown diligence in pursuing his right to habeas relief in this Court. Doc. 14 at 7–8. Quist tried to demonstrate his diligence by submitting copies of letters from attorneys he wrote seeking representation. Doc. 15

at 3. Although Quist may have sought representation, that alone does not show he diligently pursued his rights. First, there is no constitutional right to an attorney in post-conviction proceedings. Bettelyoun v. United States, 5:23-CV-05050-KES, 2024 U.S. Dist. LEXIS 170550, at *7 (D.S.D. Sept. 17, 2024) ("Prisoners do not have a constitutional right to counsel for a collateral attack on their sentence." (citing Pennsylvania v. Finley, 418 U.S. 551, 555 (1987)). Second, obtaining counsel was not a prerequisite to exhausting his claims in state court or pursing them in federal court. See generally SDCL §§ 21-27-1 to 21-27-29. And third, as Judge Moreno noted, there were alternative steps a diligent litigant could have taken to timely pursue federal habeas relief.

In objecting to the Report and Recommendation, however, Quist raises some pertinent, though ultimately futile, concerns. He asserts that Covid-19 constitutes an extraordinary circumstance that precluded him from timely filing his § 2254 petition, and Judge Moreno's recommendation glossed over the "added hardship and impediment of" certain pandemic restrictions, such as the suspension of attorney visits and postponement of habeas hearings. Doc. 15 at 2–3 (emphasis omitted). Courts tend to agree that in some cases, Covid-19 restrictions can warrant equitable tolling of AEDPA's statute of limitations. See. e.g., Mason v. Stange, No. 24-cv-00039, 2024 WL 2831198, at *3 (E.D. Mo. June 4, 2024). But the existence of Covid-19 itself does not per se warrant equitable tolling. Id.; see also Powell v. United States, 2022 WL 2811987, at *1 (11th Cir. Feb. 8, 2022). A petitioner must be able to adequately explain why they could not file a § 2254 petition before or during the Covid-19 restrictions were imposed. See United States v. Haro, 2020 WL 5653520, at *4 (D. Neb. Sept. 23, 2020) (stating that a petitioner must show that he diligently pursued his claims). This is where Quist fails.

4

As earlier stated, Quist's deadline under AEDPA to file his § 2254 petition was June 26, 2019. The first reported case of Covid-19 in the United States did not occur until January 20, 2020, and the World Health Organization did not declare Covid-19 a global pandemic until March 2020.[2] It is hard to fathom how lockdowns occurring both during and after March 2020—nine months after his AEDPA deadline passed—prevented Quist from timely filing his § 2254 petition. Quist's argument is further undermined by him filing his state habeas application, with the assistance of counsel, on March 25, 2020—ten days after states started implementing lockdowns to prevent the spread of Covid-19.[3]

Quist is therefore not entitled to equitable tolling because he failed to show diligence in pursuing his § 2254 petition. Even if he did act diligently, he has not shown extraordinary circumstances that stopped him from timely filing his petition. While Covid-19 restrictions can present extraordinary circumstances, Quist's petition was due seven months before Covid-19 first touched American soil. Thus, his objection based on equitable tolling is overruled.

b.  **Actual Innocence**

Actual innocence may also serve as a gateway through which a petitioner can overcome AEDPA's statute of limitations bar. Holliday v. Kelley, 637 F. App'x 264, 265 (8th Cir. 2016) (per curiam) (citing McQuiggin v. Perkins, 569 U.S. 383, 386 (2013)). "In an effort to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case, the [Supreme] Court has recognized a miscarriage-of-justice exception." House v. Bell, 547 U.S. 518, 536 (2006) (internal citation and quotation omitted). Under the miscarriage-of-justice exception, a habeas

---

[2] CDC, COVID-19 Timeline, David J. Sencer CDC Museum (last reviewed March 15, 2023), https://www.cdc.gov/museum/timeline/covid19.html.
[3] CDC, supra note 2.

5

petitioner may overcome the expiration of AEDPA's statute of limitations through a convincing showing of actual innocence. McQuiggin, 569 U.S. at 393. To satisfy the actual innocence standard, a petitioner must show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 329 (1995). "To be credible, . . . a claim [of actual innocence] requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. at 324. "The evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." Johnson v. Norris, 170 F.3d 816, 818 (8th Cir. 1999) (quoting Amrine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997) (en banc)). "[T]he actual innocence exception remains only a '"safety valve" for the "extraordinary case."'" Schlup, 513 U.S. at 333 (O'Connor, J., concurring) (quoting Harris v. Reed, 489 U.S. 255, 271 (1989) (O'Connor, J., concurring)).

      The Report and Recommendation concluded that Quist cannot invoke the miscarriage of justice exception because neither his petition nor subsequent court filings provide new evidence to support a claim of actual innocence. Doc. 14 at 9–10. Quist's objections raise two arguments in response. First, Quist asserts that his due process rights were violated because he was not given the opportunity to conduct an independent autopsy of the victim's body before it was cremated. Doc. 15 at 3, 5. He contends an independent autopsy would have revealed evidence exculpating him from the convicted crime. Id. Quist's argument, however, presents no new evidence. At best, his argument can be construed as stating that another autopsy *might* have revealed new evidence. But that does not suffice. The miscarriage of justice standard for actual innocence requires more. A petitioner must present new evidence that was unavailable at trial.

Schlup, 513 U.S. at 324. Quist's autopsy argument is not new. The factual basis underlying Quist's argument existed at the time of his trial, and he made the same argument on direct appeal before the South Dakota Supreme Court, where the court held that "Quist had no due process right to notice." See Quist, 910 N.W.2d at 904. Further weakening his actual innocence argument, Quist hired an independent forensic pathologist to review the autopsy report and testify at his trial. Id. at 902; CRI15-000539 at 880. The pathologist's testimony agreed with the autopsy findings and the reported cause of death. CRI15-000539 at 880.

Second, Quist contends that a video recording of the fatal assault played for the jury at trial was manipulated or doctored by the FBI. Doc. 15 at 3–9. This argument also fails to present new evidence. As earlier stated, new evidence must have been non-discoverable at the time of trial and could not have been produced earlier with reasonable diligence. See Kidd v. Norman, 651 F.3d 947, 953 (8th Cir. 2011) (concluding the district court properly required petitioner "to come forward with new reliable evidence which was not available at trial through the exercise of due diligence"). Quist provides no evidence showing the video was doctored in any way. Instead, he relies solely on his own recollection as "undeniable proof" the video was manipulated. See Doc. 15 at 4. Additionally, Quist acknowledges that this issue was discoverable at the time of trial. Id. He states in his objection that "my attorneys refused to put a [sic] expert video analyst on the witness stand," id., and "[t]hey refused to ask the simple question—'What does FBI enhanced mean?'" id. Quist has thus fallen short of the standard needed to walk through the gate of actual innocence. He has not shown that "in light of the *new evidence*, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S. at 329 (emphasis added). Therefore, his objection as it relates to actual innocence is overruled.

## IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that the Report and Recommendation, Doc. 14, having been reviewed de novo, is adopted and that Petitioner Bradley D. Quist's Objections to the Report and Recommendation, Doc. 15, are overruled. It is further

ORDERED that Respondents' Motion to Dismiss, Doc. 6, is granted. It is further

ORDERED that Petitioner Bradley D. Quist's Petition for Writ of Habeas Corpus, Doc. 1, is dismissed with prejudice as time barred. It is further

ORDERED that Petitioner Bradley D. Quist's Motion for Plain Error Reivew, Doc. 8, is denied as duplicative and untimely. It is further

ORDERED that Petitioner Bradley D. Quist's Motion for Service and to Show Cause, Doc. 9, is denied as moot. It is finally

ORDERED that based on the reasons set forth above and pursuant to Fed. R. App. P. 22(b), the Court finds that the petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Therefore, a certificate of appealability is denied.

DATED this 6 day of November, 2024.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE